EDWARD C. MURPHY *et al.*, plaintiffs in error, *vs.* SAMUEL HARRIS, defendant in error.

There was no abuse of discretion by the Court below in granting the new trial in this case.

New trial. Before Judge HOPKINS. Fulton Superior Court. October Term, 1872.

Samuel Harris brought trespass against Edward C. Murphy and George W. Anderson, alleging that the defendants had unlawfully arrested and imprisoned him in the calaboose of

the city of Atlanta, and while thus detained, had robbed him of $50 00, by threats of prosecuting and sending his son to the penitentiary, whereby he was injured and damaged $5,000 00. The defendants pleaded the general issue.

Upon the trial substantially the following evidence was introduced:

Samuel Harris, the plaintiff, testified as follows: Was arrested by the defendant, Murphy, in August, 1869; had been to a pond near Grenville's mill to fill up his water-cart; took off his coat and left it there; in the pocket was $200 00; his son, Harry, was with him; filled the boy's barrel with water and sent him off, then he followed; never thought of his coat until he arrived on Whitehall street; his son emptied his water first and went back to the pond; plaintiff told him about the coat; when he went back, met his son about ten steps from the pond with his load of water; his son said, "Father, it is not here;" followed his son back to town, met the defendant, Murphy, and told him he would give him $50 00 to recover his coat and the $200 00 in it; Murphy told him to bring his horse; he went off down the road; saw him no more for two or three hours; his son got the coat; met policeman Hinton, who was with Murphy; told him he had got his coat; run his hand in his pocket and told Hinton to tell Murphy to come to him and he would satisfy him for his trouble; soon after, met Murphy with his son, Harry; Murphy said, "halt, I want my $50 00;" plaintiff said, "Mr. Murphy, you never got my coat—if you had gotten it and brought it, I would have given you $50 00;" he said, "your son stole it;" I said he did no such thing; Capt. Anderson then said, "he claims the reward." Murphy said, "come on;" we went to Bradfield's drug store; plaintiff started to go out; Murphy said, "hold on;" two policemen came, and Murphy said, "take them to the guard-house;" plaintiff said, "what have I done; I will give bond;" two policemen carried them to the guard-house and locked them up; put them in different rooms; staid there twenty-five or thirty minutes; Murphy came and said to the two policemen, "take them to Boggus' office

quick;" when plaintiff got there, found Murphy there; he said, "I want my $50 00;" plaintiff said he could not give it, as he never got his coat; he said, "if you don't, I will write a warrant and send your son to the penitentiary;" plaintiff said, "good God, will you do that?" Murphy went to dinner, and said to defendant, Anderson, "get that $50 00 for me—if he don't pay it keep his son, and I will send him to the penitentiary;" he paid the money; Capt. Anderson said, "I have nothing to do with it, I must do as Murphy says;" he said to me, after receiving the money, "go and get some friends, some attorneys, and tell them how Murphy has acted with you;" I believe he said, "you ought to keep the money in your pocket." I staid two hours in Boggus' office; he would not let plaintiff go out; they never took out a warrant; they threatened to do so; plaintiff's wife was there crying; she said, "pay the $50 00, and let us get out of this trouble;" have been before the grand jury and given evidence in this case; it was about nine o'clock when he first told Murphy about his coat; it was about an hour before his son brought his coat to him; Murphy was captain of the police, and Anderson lieutenant under him; it was the second time his son went back to the pond when he got the coat; he was three or four hundred yards from the pond when he met him with the coat, and the money was in the pocket; paid the money to Captain Anderson; Anderson did not force him to pay it; Murphy forced him; his wife said pay it, as she was in so much trouble; it was after Anderson got the money he told him to go to a lawyer; Anderson did not tell him he would not receive it, unless he paid it freely and voluntarily.

E. C. Murphy, defendant, testified as follows: He met plaintiff on Alabama street; said he had been robbed; that he had $200 00 in his coat pocket; that he had left his coat at the pond from which he was hauling water; that he would give defendant $50 00 if he would get it for him; told him to keep his mouth shut and he would put the right man on it and get it if it was in town; sent for Captain Anderson and told him the circumstances; he (Murphy) went to the pond

Murphy *et al. vs.* Harris.

and learned that no one had been there except an old one-armed man, and found that he was at home at the time plaintiff left; after riding about much and inquiring, became satisfied that the little negro who was plaintiff's son, had stolen the coat, and ordered him arrested; policeman Hinton arrested another little negro with plaintiff's son, and all went up Whitehall street and met plaintiff near a doctor's store; ordered some policemen to take them to the guard-house and he would take the case to Boggus' Court; he sent them to the guard-house because the boy said the money came from the "rag boys;" hunted for the rag boys; no one had seen them around there. In the meantime, plaintiff and his boy had been sent to the guard-house; sent for them to be brought to Boggus' office; they had not been at the guard-house longer than fifteen or twenty minutes; he had not intended to have them kept at the guard-house long; told Boggus to fill out a warrant for robbery against plaintiff's son; Boggus did not know how to write it; plaintiff was in the room at the time; had not been to dinner; left the case with Captain Anderson; said he would go to dinner, and when he returned would prosecute the case; had intended putting plaintiff on the stand as a witness against the boy, not then knowing he was his son; was not present when the money was paid; when he came back to the office the case was put off; did not know whether warrant was taken against the boy or not; left instructions with Anderson to have the warrant made out; did not swear out a warrant himself; did not think he told Anderson not to turn them loose unless $50 00 was paid. Arrested plaintiff because he wanted him as a witness; did not want to go over the town for him; did not know, until he met plaintiff at the drug store, that the boy was his son; sent them to the guard-house after that; he never ordered them locked up; ordered them to the guard-house. There was a magistrate's office over James' Bank; Boggus' office was further from the place of arrest than that office; ordered them to the guard-house until he got the rag boys and other witnesses. Never took (Harry) him in the back room of Boggus' office and told him if he

would admit that he took the coat and money, would turn him loose; told them in the office to hurry up and do what they were going to do, to have things investigated; the money was divided between three: myself, Captain Anderson and Johnson; I got $20 00; there was an account standing between Anderson and me. I was chief of police; Anderson was captain under me; Hutchins was a policeman; Boggus was a Justice of the Peace. Never told plaintiff, in Boggus' office, that if he did not pay the $50 00 he would send his son to the penitentiary; told him it would be a penitentiary offense if proven on him; he did not get his coat, but was instrumental in getting it; was so close on the boy that he brought it up. Did not consider plaintiff a prisoner in Boggus' office; would have allowed him to go; could have gone when he pleased; took him there for a witness.

George W. Anderson, defendant, testified as follows: About nine o'clock, Murphy told him of the case; told him that the old man had lost his money at the pond, and offered $50 00 if he would get it; Murphy had been there and fixed it on a boy who was hauling water; we went out, met him and sent him to the guard-house; went with Murphy to Boggus' office; asked the old man what he was going to do, as Murphy was going to get a warrant for the young man; after discussing the matter a while, Murphy said he was going to dinner, and said to me, "You can arrange the matter; I will have him here; get a warrant out, and when I get back I will sign it." Murphy then went out. Do not remember whether the old man's wife was there or not; she pulled out the money and wanted plaintiff to pay it; he said he did not think it was right to pay it; defendant said, "Sam, if you don't think it right, go and consult a lawyer, and if it is not right, I don't want it;" the old lady said, "pay it;" plaintiff said, "yes, I will pay it;" defendant said, "if I receive it, you pay it voluntarily, that is the understanding;" told him to go out and consult a lawyer; the money was then lying on the table; there were no threats whatever made; gave him a receipt for the money; can hardly say what became of the money; don't know wheth-

Murphy *et al. vs.* Harris.

er he got any of the money or not; there was an understanding with Murphy as to dividing such money; his recollection is that they divided it; had no particular rule when they got a reward; sometimes he would get one-half, sometimes one-third; could not say that he got any of this money; it was his understanding that the $50 00 was to be paid or his son must be prosecuted; that the payment of the $50 00 was a discharge of the parties; plaintiff paid the $50 00, and they were allowed to go; if he had not paid the $50 00, should have held him until Murphy came back. When parties were sent to the guard-house, they were sometimes locked up and sometimes not; parties were sometimes put in different rooms to investigate things. Plaintiff and his son were in the streets sprinkling water, in the regular course of business; it was a common occurrence to take witnesses to the guard-house without making them prisoners; Murphy did not tell him to hold the old man there until the money was paid.

Policeman Hinton testified as follows: Murphy told him that the old man had lost his pocket-book and $200 00 in it, and that he offered $50 00 for its recovery, and wanted witness to go with him to hunt it; sometime afterwards met the old man, and he told him he had got his coat, that his son had brought it to him, that he had got his money, and wanted to know what he charged for his trouble; told him nothing, and referred him to Murphy; told Murphy that the old man had got his coat, and how he got it; Murphy said the boy had stolen the coat, "let us go and arrest him;" Murphy said, "take the old man along as a witness;" witness had before arrested another boy for stealing, and they all were carried to the guard-house; it was his understanding that the old man was to go along as a witness.

M. J. Ivey testified as follows: Was in the office of the Justice of the Peace, Boggus, when Anderson, Murphy, the old man (plaintiff) and his son, were there; while there, heard the question asked as to what was the proper offense to be charged against the boy; after some time Murphy left; the money was paid by the old man over to Anderson; Anderson

said he would not receive it, unless paid voluntarily ; he was called to witness the fact that the same was paid voluntarily ; Anderson gave a receipt for the money ; think it was understood that he was to go when the money was paid.

—— McAfee, for plaintiff, testified as follows : Saw the parties in Boggus' office ; gathered from the conversation of all the parties that plaintiff's son had been arrested by the police, charged with stealing the coat and money of his father, and that Murphy claimed $50 00 from the old man as a reward he had offered for the recovery of coat and money ; the old man claimed he ought not to pay it, because his son had brought the coat and money to him ; understood that if the $50 00 was paid the boy would be turned loose, if not, he would be prosecuted ; did not hear Anderson say anything ; did not know anything of the payment of the money ; did not know whether the old man was under arrest or not ; they were all in the office together.

Harry Harris testified as follows : He found the coat in the bosom of a rag-boy ; asked what was that in his bosom ? boy said it was none of his damned business ; he struck him, and took the coat from him ; went and gave the coat to his father ; met Murphy, who told him to get off his sprinkler, and said, I arrest you for stealing your father's coat ; Hinton arrested him and carried him to the drug store ; afterwards, Wooten, a policeman, came along, and Murphy said, take them to the guard-house ; afterwards were carried to Boggus' office, when Murphy said, get out a warrant for that boy for stealing his father's coat ; Murphy carried him in a private room, and said if he would say he stole the coat he would let him go ; Murphy said he was going to dinner, and told Anderson not to turn the boy loose until he got the $50 00 ; Murphy said, "take charge of them, and if Sam. paid $50 00, to turn them loose."

The jury returned a verdict for the defendants. The plaintiff moved for a new trial, upon the ground that the verdict was contrary to the law and the evidence. The motion was

sustained and a new trial was ordered.    Whereupon, the defendants excepted.

HILL & CANDLER, for plaintiffs in error.

THRASHER & THRASHER; W. A. TIGNER, for defendant.

TRIPPE, Judge.

This Court has frequently held that the rule is more liberal in reviewing the question whether the Court below has abused its discretion in deciding a motion for a new trial, where the same has been granted, than in the case of a refusal to grant such motion.    In this case, we are satisfied that there was no such abuse.    As the case is to be tried *de novo* on its merits, under the evidence, and as that is the sole question in it, we forbear to discuss it, and leave it to be again submitted to a jury, unbiased by anything we might say.

Judgment affirmed.